# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**RANDY S. STEVENS,**

                    **Plaintiff,**

**-vs-**                                  **Case No.  6:05-cv-1086-Orl-JGG**

**COMMISSIONER OF SOCIAL
SECURITY,**

                    **Defendant.**

_____

## MEMORANDUM OF DECISION

Plaintiff Randy S. Stevens ["Stevens"] appeals *pro se* to the district court from a final decision of the Commissioner of Social Security [the "Commissioner"] denying Stevens' application for benefits. *See* Docket No. 1 (complaint).  For the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

## I.  PROCEDURAL HISTORY

On November 29, 2001, Stevens protectively filed applications for a period of disability, supplemental security income and disability insurance benefits.  R. 17.  The Social Security Administration ("SSA") denied his application at the initial and reconsideration levels, and Stevens timely requested a hearing.  The Honorable James R. Ciaravino, Administrative Law Judge ("ALJ"), held a hearing on May 26, 2004.  R. 301-357.  Jane Beougher, a Vocational Expert ("VE"), also testified at the hearing.  On December 22, 2004, the ALJ issued an unfavorable decision.  R. 14 - 25. The ALJ concluded that Stevens has engaged in substantial gainful activity since October 2002, and

that he was not under a disability at any time through the date of the decision.  R. 24-25, Findings 2, 9.

Stevens requested review of the ALJ's decision on January 25, 2005.  R. 9-11.  Stevens' attorney stated that review was requested because "[t]he prior decision is contrary to the law and the evidence, in that claimant due to his impairments is capable of only part-time, sheltered employment as of May, 2004.  *Enclosed is documentation regarding same. . . .*"  R. 9 (emphasis added).  Stevens contends that he immediately sent Dr. James K. Shea's report dated January 20, 2005, to the Appeals Council.  Docket No. 17-1 at 3.  Dr. Shea's report is not in the Administrative Record prepared by the Commissioner, nor is it apparent from the Administrative Record that any evidence accompanied the Request for Review.  The Appeals Council never acknowledged receiving additional evidence.

On May 6, 2005, the Appeals Council concluded that there was no basis to overturn the ALJ's decision, and denied Stevens' request for review.  R. 6 - 8.  On July 22, 2005, Stevens appealed the final decision to the United States District Court.  Docket No. 1 at 1.  On January 4, 2006, Stevens filed in this Court a memorandum of law in support of his appeal.  Docket No. 17.  On March 6, 2006, the Commissioner filed a memorandum in support of her decision that Stevens was not disabled.  Docket No. 19.  The appeal is ripe for determination.

## II.    THE PARTIES' POSITIONS

Although Stevens does not clearly specify any error by the Commissioner, the Court discerns two arguments from his brief: 1.) the AC erred in failing to review Dr. Shea's report; and 2.) the Commissioner's decision is unsupported by substantial evidence.  The Commissioner responds by arguing: 1.) the AC's denial of review is not subject to review by this Court; 2.) the administrative

record does not reflect receipt of Dr. Shea's report; 3.) if the AC's denial of review is subject to judicial review, the AC will only review a case for new evidence if such evidence is material and relates back to the period on or before the date of the ALJ's decision; and 4.) the Commissioner's decision is supported by substantial evidence.

III.   **THE STANDARD OF REVIEW**

   A.   **AFFIRMANCE**

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of

factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

### B.    REVERSAL

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause.   42 U.S.C. § 405(g)(Sentence Four).   The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.  *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994); *accord, Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).   This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt.  *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord*, *Bowen v. Heckler*, 748 F.2d 629, 631, 636 - 37 (11th Cir. 1984).   A claimant may be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982), or where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).

### C.    REMAND

The district court may remand a case to the Commissioner for a rehearing under sentence four of  42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences.  *Jackson v. Chater*, 99 F.3d 1086, 1089 - 92, 1095, 1098 (11th Cir. 1996).  To remand under sentence four, the

district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. *Jackson*, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's residual functional capacity); *accord, Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 872, 829 - 30  (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work) (treating psychologist acknowledged that claimant had improved in response to treatment and could work in a supportive, non-competitive, tailor-made work environment).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (ALJ should consider on remand the need for orthopedic evaluation).  After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction.  *Jackson*, 99 F.3d at 1089, 1095.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish:  1.) that there is new, non-cumulative evidence; 2.) that the evidence is material — relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3.) there is good cause for failure to submit the evidence at the administrative level.  *See Jackson*, 99 F.3d at 1090 - 92; *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988); *Smith v. Bowen*, 792 F.2d 1547, 1550 (11th Cir. 1986); *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986); *see also, Keeton v. Dept. of Health and Human Serv.*, 21 F.3d 1064, 1068 (11th Cir. 1994).

A sentence-six remand may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant.  *Jackson*, 99 F.3d at 1095.  With a sentence-six remand, the parties must return to the district court after remand to file modified findings of fact.  *Jackson*, 99 F.3d at 1095.  The district court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.[1]  *Id.*

## IV.    THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505 - 404.1511.

---

[1]The time for filing an application for attorneys fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ["EAJA"] differs in remands under sentence four and sentence six. *Jackson*, 99 F.3d at 1089, 1095 n.4 and surrounding text. In a sentence-four remand, the EAJA application must be filed after the entry of judgment before the district court loses jurisdiction. *Id.* In a sentence-six remand, the time runs from the post-remand entry-of-judgment date in the district court. *Id.*

**A.    DEVELOPING THE RECORD**

The ALJ has a duty to fully and fairly develop the record.  *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988); *Cowart v. Schweiker*, 662 F.2d 731, 735 - 36 (11th Cir. 1981).  The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right.  *See* 42 U.S.C.§ 406; *Cowart*, 662 F.2d at 734.  The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel.  *See Cowart*, 662 F.2d at 735 - 36.

Where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  *See Brown v. Shalala*, 44 F.3d 931, 934 - 35 (11th Cir. 1995), *citing Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982).  This special duty requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts" and to be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Cowart*, 662 F.2d at 735 (citations omitted).

**B.    THE FIVE STEP EVALUATION**

The ALJ must follow five steps in evaluating a claim of disability.  *See* 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, he is not disabled.  20 C.F.R. § 404.1520 (b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520 (c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is

disabled.  20 C.F.R. § 404.1520 (d).  Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.  20 C.F.R. § 404.1520 (e).  Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then claimant is disabled.  20 C.F.R. § 404.1520 (f).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process.  42 U.S.C. § 423 (d)(2)(B).  The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having several hypothetical and isolated illnesses.  *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993).  Accordingly, the ALJ must make it clear to the reviewing court that the ALJ has considered all alleged impairments, both individually and in combination, and must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *See Jamison v. Bowen*, 814 F.2d 585, 588 - 89 (11th Cir. 1987); *Davis*, 985 F.2d at 534.  A remand is required where the record contains a diagnosis of a severe condition that the ALJ failed to consider properly.  *Vega v. Commissioner*, 265 F.2d 1214, 1219 (11th Cir. 2001).

The claimant has the burden of proving the existence of a disability as defined by the Social Security Act.  *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  If the claimant is unable to establish an impairment that meets the Listings, the claimant must prove an inability to perform the claimant's past relevant work.  *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).  In this step, the

ALJ assesses the claimant's residual functional capacity ["RFC"]. This assessment measures whether a claimant can perform past relevant work despite his or her impairment. 20 C.F.C. § 404.1520 (f); *see also, Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). The ALJ makes this determination by considering the claimant's ability to lift weight, sit, stand, push, and pull. *See* 20 C.F.C. § 404.1545(b).

The ALJ first considers whether the claimant has the RFC to perform the functional demands and duties of a past job as actually performed by the claimant. *See* SSR 82-61. If so, the claimant is not disabled. If not, the ALJ then considers whether the claimant can perform the functional demands of the job as it is generally performed in the national economy. SSR 82-61. In determining the physical exertional requirements of work available in the national economy, jobs are classified as sedentary, light, medium, heavy, and very heavy. 20 C.F.C. § 404.1567.

The claimant must prove disability on or before the last day of his or her insured status for the purposes of disability benefits. *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979); 42 U.S.C. §§ 416 (i)(3); 423(a), (c). If a claimant becomes disabled after losing insured status, the claim for disability benefits must be denied despite the claimant's disability. *See, e.g., Kirkland v. Weinberger*, 480 F.2d 46 (5th Cir. 1973); *Chance v. Califano*, 574 F.2d 274 (5th Cir. 1978).

## C.    OTHER WORK

Once the ALJ finds that a claimant cannot return to his or her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). In determining whether the

Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. *Foote*, 67 F.3d at 1558; *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines [the "grids"]. *Foote,* 67 F.3d at 1558.

Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00 (e); *Foote*, 67 F.3d at 1559; *Heckler v. Campbell*, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements). Exclusive reliance is not appropriate, however, "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills." *Walker v. Bowen*, 826 F.2d 996, 1002-03 (11th Cir. 1987). In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. *Foote*, 67 F.3d at 1559; *Chester v. Bowen*, 792 F.2d 129, 132 (11th Cir. 1986); *see also, MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986) (when non-exertional limitations are alleged, the preferred method of demonstrating that the claimant can perform specific work is through the testimony of a vocational expert).

It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. *See Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir. 1989); *Ferguson v. Schweiker*, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must

make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations. *Foote*, 67 F.3d at 1559.

### D.    TREATING PHYSICIANS

Absent the existence of "good cause" to the contrary, the ALJ must give substantial weight to the opinion, diagnosis and medical evidence of a treating physician. *See MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *Lewis v. Callahan*, 125 F.3d 1436, 1439 - 1441 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); *Sabo v. Commissioner of Social Security*, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527 (d)(2).

The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements).  Similarly, the ALJ may reject any medical opinion if the evidence supports a contrary finding.  *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1986).  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also, Schnor v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

-11-

When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1.) length of the treatment relationship and the frequency of examination; 2.) the nature and extent of the treatment relationship; 3.) the medical evidence supporting the opinion; 4.) consistency with the record a whole; 5.) specialization in the medical issues at issue; 6.) other factors which tend to support or contradict the opinion.  20 C.F.R. § 404.1527 (d).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir.1984); *see also,* 20 C.F.R. § 404.1527 (d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527 (e).  The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (*see* 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because those ultimate determinations are for the Commissioner. 20 C.F.R. § 404.1527 (e).

The ALJ must, however, state with particularity the weight given different medical opinions and the reasons therefore, and the failure to do so is reversible error.  *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).  Without the ALJ making the necessary findings, it is impossible for a reviewing court to determine whether the ultimate decision is supported by substantial evidence.  *Hudson v. Heckler*, 755 F.2d 781, 786 (11th Cir. 1985).

-12-

### E.    PAIN

Pain is a non-exertional impairment.  *Foote*, 67 F.3d at 1559; *Walker*, 826 F.2d at 1003.

Congress has determined that a claimant will not be considered disabled unless he furnishes medical

and other evidence (*e.g.*, medical signs and laboratory findings) showing the existence of a medical

impairment which could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C.

§ 423(d)(5)(A).  The ALJ must consider all of a claimant's statements about his symptoms, including

pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with

the objective medical evidence.  20 C.F.R. § 404.1529.  In determining whether the medical signs and

laboratory findings show medical impairments which reasonably could be expected to produce the

pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either
> (2) objective medical evidence that confirms the severity of the alleged pain arising
> from that condition or (3) that the objectively determined medical condition is of such
> a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote,* 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Pain alone

can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*,

957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself,

conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

### F.    CREDIBILITY

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate

specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.

*Foote,* 67 F.3d at 1561-62*; Jones v. Dep't of Health and Human Services*, 941 F.2d 1529, 1532 (11th

Cir. 1991) (articulated reasons must be based on substantial evidence).  A reviewing court will not

-13-

disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *See Hale v. Bowman,* 831 F.2d 1007, 1012 (11th Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986). As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. *Foote,* 67 F.3d at 1561-62*; Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. *See Smallwood v. Schweiker*, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Foote v. Chater*, 67 F.3d at 1562 (quoting *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir.1983) (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).

### G.     MEDICAL TESTS AND EXAMINATIONS

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; *see also, Conley v. Bowmen*, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. *Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (failure to order such an evaluation may be

-14-

reversible error).  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  20 C.F.R. § 416.917 (1998).

## V.  **APPLICATION AND ANALYSIS**

### A.  **THE FACTS**

Stevens was born on January 13, 1956 (R. 43), and was 48 years old at the time of the ALJ's decision on December 22, 2004.  R. 25.  Stevens has a high school education.  R. 60.  Stevens has past relevant work experience as a re-certification specialist, an administrative secretary, a data entry clerk, a laundry attendant, and a cashier.  R. 18.

Stevens alleges disability due to back pain and depression.  R. 54.  Although Stevens' application states that he became disabled on May 27, 2001, and continued thereafter (R. 43), he resumed working.  Stevens' earnings records reveal that he received $22,114 in income in 2001, and $23,693.50 in 2002.  R. 52.

On July 17, 1998, Jeffrey L. Prickett, Psy. D., evaluated Stevens to determine his ability to use vocational rehabilitation services.  R. 139.  Prickett administered tests to assess intelligence and personality.  R. 140-41.  Stevens' intelligence was in the low-average range of adult intellectual functioning, while personality testing suggested mild depressive symptoms and a marginal schizoid adjustment.  *Id*.  The diagnostic impression was:  Axis I: Depressive Disorder NOS (311); alcohol abuse (305.000); Axis II: Personality Disorder NOS (301.9); Axis III: right shoulder numbness.  R. 141.

Dr. W. Kevin Cox, M.D. conducted an initial evaluation of Stevens on August 20, 1998, for purposes of vocational rehabilitation.  R. 153.  At that time, Stevens reported suffering a whiplash

type of injury approximately six years earlier, and had present complaints of pain, numbness and tingling in his right shoulder, arm, and index finger.  *Id*.  Dr. Cox diagnosed Stevens with right cervical radiculopathy and recommended an MRI of the neck.  R. 152.  The MRI revealed significant degenerative disc disease throughout the cervical spine, with disc protrusions at the C3-4, C4-5, C5-6 and C6-7 vertebrae.  R. 151-52.  Dr. Cox also diagnosed Stevens with cord compression, secondary to disc bulge, C6-7.  R. 151.  Stevens saw Dr. Cox a total of six times, with the last visit on December 22, 1998.  R. 148-53.  Because of Stevens' use of alcohol and narcotics, Dr. Cox stated Stevens was not a candidate for physical therapy at that time.  R. 148.  Dr. Cox recommended that Stevens receive mental health counseling and be seen by a pain management specialist.  R. 148.  He also believed use of a cervical collar would be reasonable for acute flare-ups.  *Id*.

Dr. Marc Gerber. M.D., first examined Stevens for neck, back, shoulder  and right arm pain on April 4, 2000.  R. 194.  Stevens denied any symptoms of hand pain, numbness or tingling.  *Id.*  On physical examination, Stevens demonstrated a mildly decreased range of motion in the lumbar spine and a normal straight leg raise; reflexes were intact and no sensory deficits were noted.  R. 193.  Dr. Gerber found mild to moderate limitations of motion in Stevens' cervical spine.  R. 193.  By April 11, 2000, Stevens stated that his symptoms had improved while using medication.  R. 191.  As a result, Dr. Gerber decided to hold off on further treatment.  R. 191.  Stevens showed a functional range of motion in the cervical spine with some slight discomfort at the end ranges.  *Id*.

On March 7, 2002, Dr. William Austin, Psy. D. examined Stevens at the request of the Commissioner.  R. 195-97.  Stevens stated that he was working one to two days a week through a temporary service.  R. 195.  At the time of the examination, Stevens reported chronic neck pain with

shooting pain throughout the arms numbing his fingers, with low back pain radiating down through his legs. *Id*. He also reported hereditary tremors, which become worse with intense pain. *Id*.

Stevens reported being hospitalized for 28 days for depression in 1981, as well as fifteen years of gestalt therapy for Seasonal Affective Disorder. R. 195-96. Stevens was treated by using artificial light during the fall and winter months. R. 196. Stevens has not had any counseling since 1994. *Id*. Stevens took care of his own basic personal needs such as showering, dressing and grooming, with occasional assistance. *Id*. He also talked with his sister by phone and visited with a brother. *Id*. Stevens was capable of going to the grocery store and attending doctor appointments. *Id*. Dr. Austin described Stevens as cooperative with logical and coherent speech as well as a normal rate and tone. *Id*. Stevens' thought processes were linear, attention and concentration were sustained throughout the interview and there were no signs of hallucinations, delusions or ideas of reference. *Id*. Dr. Austin felt that Stevens' judgment, impulse control and insight were all good. *Id*. Dr. Austin's multi-axial diagnosis was: Axis I: Alcohol dependence, in full sustained remission; Seasonal Affective Disorder, by history; Axis II: no diagnosis; Axis III: degenerative disc disease throughout the cervical spine, by history; disc protrusions, by history; and disc herniation, by history.

On March 14, 2002, Dr. Nitin Haté, M.D. performed a physical examination on behalf of the Commissioner. R. 198-201. Stevens complained of neck pain radiating into his arms, lower back pain radiating into his left leg and toes, and left leg paresthesia. R. 198. Stevens maintained an antalgic and unsteady gait and he could partially walk toe to heel but could not squat. R. 198-99. Dr. Haté found diminished touch and pinprick sensations in both arms. R. 199. Stevens had normal muscle strength in all major groups and his grip strength appeared to be normal as well. *Id*. Dr. Haté noted

the absence of a left ankle deep tendon reflex, and recorded a reduced range of motion in the cervical and thoracolumbar spines. *Id.* Dr. Haté believed that Stevens would have difficulty with any strenuous physical activity, lifting heavy weights, working above shoulder level, prolonged walking, climbing stairs, and repetitive stooping or squatting. R. 200.

On December 18, 2002, Dr. Keith Holden, a state agency medical consultant, reviewed the record and concluded that Stevens could lift and carry twenty pounds occasionally, ten pounds frequently, as well as sit, stand or walk for up to six hours at a time in an eight hour work day. R. 233. However, Dr. Holden felt that Stevens could only occasionally climb, balance, stoop, kneel, crouch or crawl. R. 234. Dr. Holden also believed that Stevens had no manipulative, visual, communicative or environmental limitations. R. 235-36.

On December 28, 2002, Dr. Ann Adams, Psy. D., a state agency psychological consultant, felt that Stevens was moderately limited in his ability to interact appropriately with the general public, accept instructions and respond to criticism, and get along with co-workers or peers. R. 240-41.

On August 5, 2004, Dr. James P. Ryan, an orthopaedic surgeon, examined Stevens at the request of the Commissioner. R. 290-95. Stevens stated that his problems with neck and back pain arose from a slip and fall injury in 1998. R. 290. Stevens stated that any activity seemed to aggravate his symptoms, but he continued to work in a laundromat. R 290. Stevens did not use a cane or crutch and walked without evidence of an antalgic gait. R. 291. Stevens could climb on and off the examination table. *Id*. The range of motion in Stevens' neck and back was decreased, and cervical spine range of motion was significantly decreased. *Id.* Stevens had full range of shoulder motion.

*Id.* Straight leg raising caused pain at seventy degrees in Stevens' back. *Id.* X-rays revealed extensive degenerative changes in the cervical and lumbar spines. *Id.*

Dr. Ryan felt that Stevens could perform only light duty work with no lifting over twenty-five pounds and no repetitive bending or squatting. R. 292. Specifically, Dr. Ryan believed that Stevens could lift twenty-five pounds occasionally and ten pounds frequently, as well as stand or walk for about six hours in an eight hour work day. R. 296. Dr. Ryan felt that Stevens' ability to sit, push and pull remained unaffected by his impairments. R. 297. Also, Stevens could occasionally climb, balance, kneel and never crouch, crawl or stoop. *Id.*

The ALJ conducted an administrative hearing on May 26, 2005. R. 301-57. Stevens testified that his earnings from 2001 and 2002 resulted from a part-time job performing data entry. R. 314-15. At the time of the hearing, Stevens testified that he had been working for a year and a half at a laundromat, averaging twenty-four hours a week. R. 315-16. Stevens stated that he made $8.00 an hour and the heaviest he lifted was forty pounds at a time. R. 315. Stevens estimated his earnings to be approximately $15,000 in 2003. R. 316-17.

The ALJ asked Jane Beougher, a vocational expert (VE) to consider a hypothetical individual with the limitations described by Drs. Holden and Adams, and as modified by Stevens' testimony. R. 349-51.[2] The VE testified that such an individual could return to Stevens' past relevant work as

---

[2] Q [ALJ]: From the standpoint of RFC, the functional capacity assessment of the DDS based upon the reports that they show, show, indicate that he should be able to lift at least twenty pounds because of his cervical degenerative disc, disc disease – occasional twenty, frequent ten pounds.

Standing and walking, he says he does it, but it hurts him. But he's doing it, and they said that he could stand about six hours in an eight-hour day. Sit, they say the same, six hours in an eight-hour day with normal breaks. Push and pull, unlimited as, other than as shown for his lift and carry limitations. With respect to his posture limitations, everything marked is occasional. Occasional means very little to one-third of the time basically.

Manipulative limitations. They don't talk about that. We'll talk about his testimony, though, momentarily. Visual. He wears glasses, but apparently has adequate vision. Communicative limitations, none. Environmentally, they say none. With respect to the mental aspects of his claim, there is talk about affective disorders and difficulty concentrating, thinking, sleep,

a certification specialist, administrative secretary, and data entry clerk. R. 351. The ALJ found that Stevens could perform his past relevant work and, therefore, was not disabled. R. 25, Findings 7 and 8.

Stevens claims he submitted to the AC a medical evaluation dated January 20, 2005, by Dr. James K. Shea, a pain management specialist. Dr. Shea reviewed Stevens' medical records that were presented to the ALJ, and also reviewed the ALJ's decision. Docket 17-1 at 8. Dr. Shea also conducted a physical examination of Stevens. Docket 17-1 at 11-13. Stevens was ambulating with a cane and presented wearing a soft cervical collar and lumbar support belt. Docket 17-1 at 11. Dr. Shea's assessment was that Stevens had C5-6 disc herniation, L4-5 disc herniation, severe varicose veins in left leg, right C5-6 radiculopathy, and possible left S1 radiculopathy. Docket 17-1 at 13. Dr. Shea opined that Stevens was limited to sitting for 3 hours in an 8-hour workday, standing or walking 2 hours in an 8-hour workday, and that he must alternate his position every 15 minutes. Docket 17-1 at 14. Lifting restrictions were frequently lift up to 5 pounds, occasionally lift between 6-10 pounds, and never lift more than 11 pounds. *Id*. Dr. Shea also noted that due to hand tremors, Stevens could make only "light efforts" in fine manipulation. *Id*. Stevens also was restricted from using his feet for

---

disturbance, loss of interest in activities, and such. And they indicate that, socially, he has some limitations. I asked the claimant whether he is dealing with the public. He says he does. He loses his temper. He is under control, he claims. He doesn't lose control, and he's not out of control, impulse-wise.

With respect to the limitations, they talk about moderate limitations. And for the term moderate, I'm going to assume moderate is basically consistent with occasional type frequency – very little to one-third of the time. Ability to interact with the general public, occasional, moderately limited. The ability to accept instructions and respond appropriately to criticism from supervisors, the ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes.

And the comments by the psychologist, there are no significant limitations or concentration or memory. The claimant can understand, remember, and carry out, at a minimum, simple to detailed work instructions. He can make relevant, work-related decisions, and can concentrate for necessary time periods. His limitations are primarily physical. Socially, the claimant is described as irritable and prone to arguing with others. There appears to constitute a long-term habitual way of coping with interpersonal stressors. He remains capable of interacting adequately in the work setting, however. Adaptive skills appear intact. With these limitations, both some physical and mental, would the claimant be able to perform work activity as he has performed in the past?

A [VE]: Yes, sir.

repetitive movements as in pushing or pulling leg controls, and recommended elevating his leg three times per day for 20-30 minutes.  Docket 17-1 at 15.  Dr. Shea further stated Stevens required 5-10 minute rest breaks per hour.  *Id.*

### B.   THE ANALYSIS

#### 1.   The Commissioner Waived Any Defense Based on the Untimeliness of Stevens' Appeal

The Social Security Act provides for judicial review of the final decision if the action was commenced within 60 days from receipt of the AC's letter.  42 U.S.C. § 405(g).  An additional five days is added for mail service.  20 C.F.R. § 422.210.  The 60-day filing deadline is not jurisdictional, but is a statute of limitations that may be waived by the parties.  *Shows v. Dep't of Health & Human Servs.*, 740 F2d 891 (11th Cir. 1984); *Mathews v. Eldridge*, 424 U.S. 319, 328 n.9 (1976); *Weinberger v. Salfi*, 422 U.S. 749, 763-764 (1975).  Ordinarily, the statute of limitations defense is waived if it is not pleaded as an affirmative defense.  *See Am. Nat'l Bank of Jacksonville v. FDIC,* 710 F.2d 1528, 1537 (11th Cir.1983); Fed. R. Civ. P. 8(c).  In some circumstances, however, the defense may be raised at a later time if the plaintiff has not suffered any prejudice.  *See Grant v. Preferred Research, Inc.,* 885 F.2d 795, 797-98 (11th Cir. 1989) (defendant allowed to raise limitations defense in a summary judgment motion because plaintiff previously was aware of defendant's intent to rely on the argument and suffered no prejudice).

In this case, the AC's letter was dated May 6, 2005.  R. 6.  Adding five days for mailing, Stevens' deadline to file his appeal in the District Court was July 10, 2005.  As Stevens filed his brief on July 22, 2005, it was untimely.  The Commissioner, however, failed to raise the untimeliness of Stevens' appeal in its answer, by motion, or in its brief.  The Commissioner has waived the defense.

-21-

**2.      Remand to the Commissioner to Consider Dr. Shea's Evaluation is Unwarranted**

Stevens argues that the AC failed to consider Dr. Shea's evaluation.  If the AC received the additional evidence, it was obligated to consider and evaluate the new evidence to determine whether there is a basis for changing the ALJ's decision.  *Sims v. Apfel*, 530 U.S. 103,  S.Ct. 2080, 2086 (2000);  *Falge v. Apfel*, 150 F.3d 1320, 1322 n. 4 (11th Cir. 1998).  If a claimant submits evidence that does not relate to the relevant period under consideration, "the Appeals Council will return the additional evidence to [the claimant] with an explanation as to why it did not accept the additional evidence and will advise [the claimant] of [his or her] right to file a new application."  20 C.F.R. § 404.976(b)(1)(2005).  Failure to follow these procedures may be reversible error.  *See Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)  (the Appeals Council commits reversible error when it refuses to consider new evidence and then denies review).[3]

In this case, the alleged additional evidence is not in the record.  Assuming the AC received the additional evidence and failed to consider it or failed to return the evidence with the required explanation, it would be error.  Nevertheless, such error would be harmless as it relates to this appeal.

The courts may decline to reverse and remand on procedural grounds when it is clear that the procedural error did not compromise the decision-making process. *Ware v. Schweiker,* 651 F.2d 408, 414 (5th Cir. 1981)[4] (ALJ's failure to warn Social Security claimant she bore the burden of proof and failure to probe fully the job duties of a nurse's aide were harmless error not requiring remand when

---

[3] The Court rejects the Commissioner's argument that the AC's denial of review is not subject to judicial review.  *See, Williams v. Comm'r of Social Security*, 407 F. Supp. 2d 1297 (M.D. Fla. 2005).

[4] The *Ware* case was decided on July 24, 1981, making it binding precedent pursuant to *Bonner v. Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

there was no showing of prejudice); *Alejandro v. Barnhart*, 291 F. Supp. 2d 497, 515 (S.D. Tx. 2003) (ALJ's failure to consider expressly the findings of one state agency medical consultant ["SAMC"] and to specifically reference or discuss the findings of another SAMC in the decision was harmless error); *Wright v. Barnhart*, 153 Fed.Appx. 678, 684 (11th Cir. 2005) (unpublished) (an incorrect application of the Social Security regulations resulted in harmless error because a correct application would not contradict the ALJ's ultimate findings). The law does not require this Court to reverse and remand for technical failings that do not influence the outcome. This principle is especially important in the Social Security context where the sheer volume of cases requires that the courts not further burden the Social Security Administration with the remand of futile claims. *See Alejandro*, 291 F. Supp. 2d at 515-16 (citing cases).

Given Stevens' substantial gainful activity, there was only the possibility of a closed period of disability from May 27, 2001, to October 2002. R. 19. Dr. Shea's evaluation does not purport to address Stevens' condition during this time period, but is an evaluation of his condition as of January 2005. Dr. Shea's evaluation includes new medical conditions (severe varicose veins and possible S1 radiculopathy), which Stevens never raised in his current application. Further, to the extent that Dr. Shea opines regarding Stevens' ability to sit, stand, walk or lift, he does not state which physical condition (*e.g.*, cervical disc herniation or varicose veins) creates the limitation.

Dr. Shea's report is new evidence that the AC must review only if it is material and relates back to the period on or before the date of the ALJ's decision. *See* 20 C.F.R. § 404.970(b). Because Dr. Shea's report includes new conditions not previously addressed by any other physician, there is

-23-

no evidence that it relates back to the period on or before the ALJ's decision.  Remand to the AC to consider Dr. Shea's report, therefore, is unwarranted.

### 3.    Substantial Evidence Supports the Commissioner's Decision

A claimant is not disabled when he retains the residual functional capacity to perform:  (1) the actual functional demands and job duties of a particular past relevant job; or (2) the functional demands and job duties of the occupation as generally required by employers throughout the national economy.  *Jackson v. Bowen*, 801 F.2d 1291, 1293-94 (11th Cir. 1986).  The ALJ may, but is not required, to utilize the services of a vocational expert at step four of the sequential evaluation process. *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997).

In formulating a hypothetical question for the vocational expert, the ALJ based the physical and mental limitations contained therein on the opinions of Dr. Holden and Dr. Adams.  R. 349-51. Dr. Holden believed that Stevens could lift and carry twenty pounds occasionally, ten pounds frequently, as well as sit, stand and walk for about six hours in an eight hour work day.  R. 233. According to this report, Stevens' ability to push and pull remained unlimited.  R. 233.  Dr. Holden also stated that Stevens could only occasionally climb, balance, stoop, kneel, crouch or crawl.  R. 234.

The ALJ also received the opinion of Dr. James P. Ryan, who examined Stevens on August 5, 2004.  R. 290-95.  Dr. Ryan felt that Stevens could perform only light duty work with no lifting over twenty-five pounds and no repetitive bending or squatting.  R. 292.  Specifically, Dr. Ryan believed that Stevens could lift twenty-five pounds occasionally, ten pounds frequently, as well as stand or walk for about six hours in an eight-hour work day.  R. 296.  Dr. Ryan felt that Stevens' ability to sit, push and pull remained unaffected by his impairments.  R. 297.  Also, Stevens could occasionally climb,

balance, and kneel but never crouch, crawl or stoop.  R. 297.  The ALJ stated in his written decision that he was giving the greatest weight to the opinion of Dr. Ryan.  R. 23.

The opinions of Dr. Holden and Dr. Ryan are consistent with respect to Stevens' ability to lift, carry, sit, stand and walk.  However, there is a minor and inconsequential difference between these two physicians regarding Stevens' postural limitations.  Dr. Holden stated that Stevens could only occasionally climb, balance, stoop, kneel, crouch or crawl.  R. 234.  Dr. Ryan stated that Stevens could occasionally climb, balance and kneel but never crouch, crawl or stoop.  R. 297.  The RFC finding reflects the opinions of both physicians that Stevens could occasionally climb, balance and kneel. R. 25, Finding 6.  The ALJ, however, did not incorporate Dr. Ryan's opinion that Stevens' could never crouch, crawl or stoop.  R. 25, Finding 6.  Such an omission is at most harmless error since the Dictionary of Occupational Titles (DOT) states that Stevens' past relevant work as a certification specialist, administrative secretary and data entry clerk does not require any crouching, crawling or stooping.  See DOT 099.167-010, 169.167-014, 203.582-054.

The mental limitations contained in the ALJ's residual functional capacity finding and the hypothetical question are also supported by substantial evidence.  On December 28, 2002, Dr. Ann Adams felt that Stevens was moderately limited in his ability to interact appropriately with the general public, accept instructions and respond to criticism, and get along with co-workers or peers.  R. 240-41.  Dr. Adams concluded that Stevens was not significantly limited in thirteen other categories including the ability to maintain attention and concentration; to understand, remember and carry out simple to detailed instructions, as well as make simple work related decisions.  R. 240-41.  Dr. Adams' opinion also is consistent with the opinion of Dr. Austin.  R. 195-97.

-25-

This evidence is more than a scintilla and a reasonable person would accept it as adequate to support the conclusion that Stevens was not disabled within the meaning of the law.   Substantial evidence, therefore, supports the Commissioner's decision.

**VI.    CONCLUSION**

For the reasons stated above, the decision of the Commissioner is **AFFIRMED**.

**DONE** and **ORDERED** in Orlando, Florida on May 11, 2006.

JAMES G. GLAZEBROOK
UNITED STATES MAGISTRATE JUDGE

Mary Ann Sloan, Chief Counsel
Dennis R. Williams, Deputy Chief Counsel
Paul Jones, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia        30303-8920

Susan Roark Waldron
Assistant United States Attorney
400 N. Tampa St., Suite 3200
Tampa, FL             33602

The Honorable James R. Ciaravino
Administrative Law Judge
c/o Social Security Administration
Office of Hearings and Appeals
Suite 300, Glenridge Building
3505 Lake Lynda Drive
Orlando, FL            32817